**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Sherrill,<br><br>              Plaintiff,<br><br>v.<br><br>Martin Bressor, et al.,<br><br>              Defendants. | No. CV-23-02708-PHX-ROS<br><br>**ORDER** |

Before the Court are the parties' motions in limine, proposed jury instructions, and proposed verdict forms.

## I.      MOTIONS IN LIMINE

### A. Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Firearms Ownership

Plaintiff moves to exclude "all evidence and argument relating to Plaintiff's lawful ownership of, or licensure to carry, firearms." (Doc. 92 at 1.) This request is unopposed as Defendant has no intention of offering any such evidence or argument in its case in chief, but Defendant wishes to reserve the right to "conduct otherwise proper impeachment" on this issue "if circumstances at trial make the issue relevant." (Doc. 103 at 1.) As such, the Court will grant the Motion to File Exhibit 2 Under Seal, (Doc. 90), directing the Clerk of Court to file under seal the exhibit lodged at Doc. 91, and grant Plaintiff's First Motion in Limine to exclude evidence of Plaintiff's firearm ownership in Defendants' case in chief.

**B. Plaintiff's Motion in Limine to Exclude Evidence Mischaracterizing Plaintiff's Protected Complaints**

Plaintiff "moves to preclude evidence that would mischaracterize Plaintiff's protected [agency] complaints." (Doc. 93 at 1.) More specifically, "Plaintiff seeks an order precluding Defendants and their witnesses from labeling the substance of Mr. Sherrill's [agency] complaints as 'false,' 'frivolous,' 'rumors,' or 'gossip' before the jury" because such statements would be unfairly prejudicial under Rule 403. (*Id.* at 2.) Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

To whatever extent Mr. Bressor will testify at trial that, in his opinion, Plaintiff's allegations in the administrative complaints against him were factually false, this would be admissible with foundation as a lay opinion rationally based upon Mr. Bressor's personal knowledge of the events at issue and could assist the jury in determining whether Mr. Bressor filed the underlying lawsuit with malice and abused the judicial process for an improper purpose. *See* Fed. R. Evid. 701. And the introduction of such an opinion would not appear to pose any appreciable risk of prejudice to Plaintiff. Indeed, if Mr. Bressor testifies that he believed the underlying allegations against him to be false, this might suggest he had a legitimate purpose in suing Plaintiff for defamation; but the jury could also find Mr. Bressor's opinion is evidence that he intended to retaliate against Plaintiff for the allegedly false allegations. Mr. Bressor's motivation in filing the underlying defamation suit is a fact issue for the jury to resolve, and the jury is permitted to consider Mr. Bressor's opinion in assessing whether Mr. Bressor's state of mind.

Thus, Defendants are allowed to dispute the contents of the complaints and related documents with admissible evidence. However, Defendants have not offered the foundation to admit seemingly emotional rather than factually supported opinions characterizing the contents of the complaints as "rumors," "frivolous," "gossip," or the like, which would constitute inadmissible opinion testimony under Rules 701 and 702. This

emotionally charged opinion evidence does not appear to be rationally based on a witness's knowledge and it risks unduly prejudicing the jury. As such, the Court will grant in part Plaintiff's Motion in Limine to Exclude Evidence Mischaracterizing Plaintiff's Protected Complaints, excluding emotional opinions like "rumors" and "gossip" while permitting Defendants to offer with foundation factual opinions based on personal knowledge, such as that the allegations were "false."

**C. Plaintiff's Motion in Limine to Preclude Any Defense Expert Witness Testimony**

Plaintiff moves to exclude any expert witness testimony for the Defendants.[1] (Doc. 95.) It is unclear why Plaintiff filed this motion, as Defendants aver that Plaintiff was informed Defendants do not intend to call any expert witness or offer expert testimony at trial. (Doc. 105 at 1.) As such, the Court will deny as moot Plaintiff's Motion in Limine to Preclude Any Defense Expert Witness Testimony.

**D. Defendants' First Motion in Limine to Exclude EEO/EEOC/Veterans Administration Claims**

Defendants move to exclude (1) evidence or argument concerning the contents of any EEO/EEOC/VA complaints,[2] and (2) evidence or argument concerning Mr. Bressor's removal from federal service.[3] (Doc. 96.)

First, Defendants argue the administrative complaints and Mr. Bressor's removal are not relevant because Plaintiff's "claims turn on what [Mr. Bressor] knew and intended when he filed the Defamation Lawsuit against Plaintiff, *not* on the contents of any EEO/EEOC/VA Complaint and related documents, and [Mr. Bressor]'s removal from federal service." (*Id.* at 3–4.) "Evidence is relevant if: (a) it has any tendency to make a

---

[1] Confusingly, the first sentence of this motion states Plaintiff "moves to exclude lay-opinion testimony on legal conclusions," (Doc. 95 at 1), yet the entire motion discusses the exclusion of undisclosed expert testimony.

[2] Defendants do not specify any specific documents that should be excluded. By arguing to exclude "the contents" of the administrative complaints, the Court presumes Defendants do not object to evidence or argument concerning the fact that these complaints were filed.

[3] Defendants make no separate legal argument as to why the fact of Mr. Bressor's removal from federal service should be excluded from trial. Instead, Defendants seem to argue, without explanation, that the same reasoning for excluding the administrative complaints extends to excluding evidence of Mr. Bressor's removal.

- 3 -

fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, Defendants make no argument supporting the request. Rather, they simply state the conclusion that Mr. Bressor's removal from service and the contents of the administrative complaints are not relevant to what Mr. Bressor "knew and intended" when he filed the underlying lawsuit.

Second, Defendants argue the administrative complaints and Mr. Bressor's removal should be excluded because "their admission would invite precisely the sort of confusion and prejudice Rule 403 is designed to prevent." (Doc. 96 at 4.) Defendants suggest that exposing the jury "to detailed allegations of employment practices, including charged language, one-sided narratives, and Defendant's removal from federal service" will leave the jury "naturally . . . tempted to decide whether those allegations were true, effectively trying a separate employment case" within this trial. Notably, the cases relied on by Defendants concern the exclusion of final agency determinations in cases where a jury was tasked with making this same determination—whether a defendant was guilty of the alleged discrimination or retaliation. *See Amantea-Cabrera v. Potter*, 279 F.3d 746 (9th Cir. 2002); *Ariz., Dep't of L., C.R. Div. v. ASARCO, L.L.C.*, 844 F. Supp. 2d 957 (D. Ariz. 2011). The risk of unfair prejudice in such cases is clear because an agency's "conclusion that violations have occurred" poses a great risk of unfair prejudice "as jurors might find it difficult to evaluate the evidence independently." *ASARCO*, 844 F. Supp. 2d at 981.

But here, Plaintiff does not seek to admit any final agency determination or finding of liability. (Doc. 107 at 4.) Rather, Plaintiff seeks to proffer evidence and argument concerning his administrative complaints and the subsequent VA harassment investigation that "predated the underlying defamation suit by months." (*Id.* at 3.) Additionally, Plaintiff seeks to admit a Memorandum of Record from Deputy Medical Center Director Michael Welsh that substantiated Plaintiff's harassment allegations against Mr. Bressor. (*Id.*) Because Mr. Bressor knew of the complaints, investigation, and Welsh substantiation, Plaintiff argues this evidence "directly explain[s Mr. Bressor's] motive to retaliate when he sued Mr. Sherrill ten months later." (*Id.*) Plaintiff further argues this evidence is not

offered to prove the truth of Plaintiff's allegations but instead to prove "what Mr. Bressor knew, and when, going to absence of probable cause to sue; Mr. Bressor's motive to retaliate, going to malice; and Mr. Bressor's ulterior purpose in filing a defamation suit against the very person whose substantiated harassment complaints led to corrective action against him." (*Id.*) Thus, with proper foundation, this evidence could be relevant to both of Plaintiff's claims, as Plaintiff must show that Mr. Bressor instituted the defamation action with malice and without probable cause, *see Bradshaw*, 758 P.2d at 1319, and that Mr. Bressor abused the judicial process for an ulterior purpose, *see Nienstedt*, 651 P.2d at 881.

Plaintiff states the exhibits are not being offered for the truth of the matters asserted. But if not offered for the truth, it is unclear that all of these documents are relevant without significant foundation. A limited subset of exhibits concerning the administrative complaints could be relevant to establish Mr. Bressor's state of mind if he received notice of the allegations, investigation, and substantiation. However, to be relevant to Mr. Bressor's intent in filing and prosecuting the underlying lawsuit, categorically such evidence must predate Mr. Bressor's actions in the underlying lawsuit and Mr. Bressor must have had personal knowledge. Thus, the fact of Mr. Bressor's removal by the VA because he filed a lawsuit against Plaintiff may be relevant, but foundation has not been offered on how the fact of removal is relevant to any of the elements of either claim. What is more, the contents of the documents may be more prejudicial than probative under Rule 403.

As such, the Court will grant Defendants' First Motion in Limine without prejudice, and Plaintiff shall have the opportunity to proffer specific nonhearsay exhibits with foundation and an appropriate limiting instruction in support of their admissibility.

**E. Defendants' Second Motion in Limine to Exclude Undisclosed Medical Records**

Defendants move "for an order precluding Plaintiff from using or referencing any medical records, medical summaries, provider notes, or opinions derived from medical records that were not timely disclosed or produced during discovery." (Doc. 97 at 1.)

As a threshold matter, Defendants' request may fail to satisfy Rule 103(a)'s specificity requirement. "Motions to exclude evidence require the party seeking exclusion to inform the Court of the evidence's substance with specificity." *Gomez v. Am. Med. Sys. Inc.*, No. CV-20-00393-PHX-ROS, 2021 WL 12313068, at *1 (D. Ariz. June 17, 2021) (citing Fed. R. Evid. 103(a)(2)); *see, e.g.*, *United States v. Bradford*, 905 F.3d 497, 505 (7th Cir. 2018) (finding a motion in limine did not satisfy Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain why it was inadmissible). This failure alone can be grounds to deny Defendants' request.

Interpreting Defendants' request to concern Plaintiff's medical records that were relied upon by Dr. Reading in forming his expert opinion, Plaintiff argues Defendants' request is predicated on the erroneous "assumption that Plaintiff intends to produce his prior medical records as substantive evidence of damages from the underlying lawsuit." (Doc. 108 at 4.) Plaintiff explains he does intend to proffer his prior medical records as evidence of damages at trial, so Defendants' request appears moot.

Lastly, "[o]ut of an abundance of caution," Plaintiff has supplemented his prior productions with the medical records reviewed by Dr. Reading. (Doc. 108 at 5.) In response to Plaintiff's supplemental production, Defendants filed a Motion to Exclude Late-Disclosed Medical Records, Preclude PTSD Exacerbation Damages, and for Related Rule 37 Relief. (Doc. 117.) Citing Rule 37(c)(1), Defendants seek to preclude Plaintiff from pursuing PTSD exacerbation damages because Plaintiff "fail[ed] to timely disclose evidence necessary to support that party's claims and damages theory." (*Id.* at 5.) Alternatively, Defendants request an adverse inference instruction, on the grounds that Plaintiff "destroy[ed] evidence or ma[de] relevant evidence unavailable." (*Id.*) As to the first argument, the supplemented medical records are not "necessary" to Plaintiff's claim for PTSD exacerbation damages—they are records that were reviewed by Plaintiff's expert, their existence was divulged in Dr. Reading's report, and they will not be introduced at trial to support Plaintiff's claim for damages. As to the second argument, Plaintiff did nothing to "destroy" or otherwise make these records unavailable to Defendants.

Defendants were given notice that these records existed, and they could have requested their production during discovery.

As such, the Court will deny without prejudice Defendants' Second Motion in Limine. The request to exclude the undisclosed medical records is moot as Plaintiffs do not intend to proffer these records at trial. Additionally, the request to exclude Dr. Reading's testimony on this ground is denied without prejudice unless Defendants can establish prejudice because Defendants were not provided these specific records for potential defenses or cross-examination, which appear to have been required to be produced during discovery. To address any risk of prejudice, the Court approves of Plaintiff's suggestion to permit a limited deposition of Dr. Reading, but only if Plaintiff agrees to pay all fees and costs associated with the deposition.

The Court will also deny Defendants' Motion to Exclude Late-Disclosed Medical Records, Preclude PTSD Exacerbation Damages, and for Related Rule 37 Relief, (Doc. 117), because the request is moot and Defendants have not established that sanctions should be imposed.

**F. Defendants' Third Motion in Limine to Exclude Evidence of Undisclosed Damages**

Defendants request "an order excluding evidence of damages that were not timely disclosed or produced during discovery." (Doc. 98 at 1.) In particular, Defendants argue that the amount of damages claimed is "purely speculative because Plaintiff failed to timely disclose damages computations and any damages evidence," as well as "failed to provide any medical records or bills, or any damages expert opinions to support his speculative damages amount." (*Id.* at 3.)

In response, Plaintiff stipulated his claim for economic damages at trial is limited to the disclosed $8,640 in attorney's fees from the underlying defamation case and reasonable attorney's fees and costs from the present case. (Doc. 109 at 2.) As for the remaining damages for "emotional distress, PTSD exacerbation, fear of additional retaliation, loss of time and enjoyment with family and friends, and other non-economic harms," Plaintiff

asserts these are "not subject to the mathematical computation requirement of Rule 26(a)(1)(A)(iii) under uniform federal authority" and therefore calculations are not required. (*Id.*)

Rule 26(a) requires a party to provide "a computation of each category of damages claimed" and "also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). But "district courts have frequently denied motions to compel computations of emotional distress and punitive damages because they are difficult to quantify and are typically considered a fact issue for the jury." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) (citation modified); *see Creswell v. HCAL Corp.*, No. 04cv388 BTM (RBB), 2007 WL 628036, at *2 (S.D. Cal. Feb. 12, 2007) ("While Rule 26 generally requires a party to provide a computation of such damages, emotional damages, because of their vague and unspecific nature, are oftentimes not readily amenable to computation."); *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)."). Additionally, the cases cited by Defendants are not relevant to this issue. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (affirming exclusion of damages in FLSA opt-in class action where plaintiffs failed to disclose and compute damages for the individual opt-in plaintiffs); *Villagomes v. Lab'y Corp. of Am.*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011) (finding, on a motion for summary judgment, that a plaintiff did not meet Rule 26(a)'s computation requirement by simply providing "personal calendar entries regarding her work at Harrah's, some tax documents, tip logs, and time sheets," which "may be sufficient for a motion *in limine* to exclude particular evidence").

Apparently, Plaintiff's claimed noneconomic damages will be supported by the testimony of Plaintiff and his expert witness. This evidence was previously disclosed, and Defendants shall have the opportunity to cross-examine both Plaintiff and his expert as to

the value of the non-economic harms. Ultimately, any award of noneconomic damages involves issues of fact to be resolved by the jury after weighing the supporting evidence. Thus, Plaintiff's failure to provide a computation of these non-economic damages does not preclude Plaintiff from seeking these damages at trial. *But see E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) (finding failure to provide computation of emotional distress and punitive damages may foreclose a plaintiff from suggesting a specific amount to the jury).

In any event, Plaintiff has made clear he does not intend to introduce any evidence of damages that were not previously disclosed or produced, so the motion appears moot and the Court will grant Defendants' Third Motion in Limine to Exclude Evidence of Undisclosed Damages (Doc. 98), to exclude evidence of undisclosed damages that were not timely disclosed or produced during discovery. Additionally, Dr. Reading will not be permitted to testify regarding the contents of the excluded evidence. Alternatively, the Court will allow Defendants to take Dr. Reading's deposition on the damages regarding the undisclosed evidence, as long as Plaintiff bears all costs and fees associated with the deposition.

**G. Defendants' Fourth Motion in Limine to Exclude Email**

Defendants move to preclude the introduction of and any reference to an email and attachment from Richard J. Casey to Michael J. Welsh dated August 17, 2021 ("Casey Email"). (Doc. 99.)

As a threshold matter, Defendants may again fail to satisfy Rule 103(a)'s specificity requirement, which could be grounds to deny their request. "Motions to exclude evidence require the party seeking exclusion to inform the Court of the evidence's substance with specificity." *Gomez*, 2021 WL 12313068, at *1; *see, e.g.*, *Bradford*, 905 F.3d at 505 (finding a motion in limine did not satisfy Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain why it was inadmissible). Defendants state that the Casey Email is "an email and attachment dated August 17, 2021 from Richard J. Casey to Michael J. Welsh" (Doc. 99 at 1), and argue that an email predating the underlying

defamation suit "has no relevance to the wrongful institution and abuse of process claims in this case," (*id.* at 2). Both of Plaintiff's claims require evidence as to Mr. Bressor's improper intentions regarding the underlying lawsuit, so evidence predating the lawsuit would likely be relevant to this inquiry. Although Defendants suggest "the contents of the Casey Email" are not relevant, they fail to specify exactly what the contents are or why the Casey Email is not relevant apart from the date on which it was sent.

Defendants additionally argue that the Casey Email is hearsay within hearsay. (*Id.* at 4.) Plaintiff responds that the Casey Email is nonhearsay because it is not offered "to prove the truth of any factual statement contained within it." (Doc. 110 at 2.) Rather, Plaintiff offers the Casey Email to show that (1) "a formal harassment-investigation process was initiated against Mr. Bressor at the Phoenix VA more than a year before he sued Mr. Sherrill;" (2) "Mr. Bressor knew of that process and the resulting substantiation; and" (3) "Mr. Bressor's later defamation suit was filed in retaliation, without probable cause, and for an ulterior purpose." (*Id.*) Additionally, even if the Casey Email is hearsay as Defendants argue, Plaintiff avers that it can come in under Rule 803(6) as a record of regularly conducted activity or 803(8) as a public record because it "was created in the regular course of the VA's Facility Harassment Prevention Program" and "Mr. Welsh expressly relied on the assigned Fact Finder's review in his official Memorandum of Record substantiating the underlying allegations." (*Id.* at 3.) Lastly, Plaintiff notes that he will be calling Mr. Casey as a witness at trial to authenticate the Casey Email and testify regarding the harassment investigation. (*Id.*)

As such, the Court will deny Defendants' Fourth Motion in Limine as long as Plaintiff provides foundation to establish the Casey Email is proffered as an exception to hearsay or for the nonhearsay purpose of showing Mr. Bressor's awareness of the harassment investigation, as well as foundation to establish the Casey Email is relevant to proving the malice, absence of probable cause, and improper purpose elements of Plaintiff's claims for wrongful institution of civil proceedings and abuse of process. Any risk of unfair prejudice may be cured by a Rule 105 limiting instruction.

**H. Defendants' Fifth Motion in Limine: To Exclude (or Limit) Plaintiff's Expert Under Rule 702 and Daubert**

Defendants move to exclude[4] Dr. Reading's testimony as irrelevant, prejudicial, and unreliable under Rule 702 and *Daubert*. (Doc. 101.) Rule 702 provides that a qualified expert may testify in the form of an opinion if the proponent demonstrates that more likely than not:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–95 (1993) (specifying nonexhaustive factors to consider when assessing the reliability of expert testimony under Rule 702). *Daubert* motions to exclude expert testimony can be brought during discovery or as a motion in limine. *See, e.g.*, *Est. of Schuck v. Cnty. of San Diego*, No. 23-cv-00785-DMS-AHG, 2025 WL 2180987, at *3 (S.D. Cal. Aug. 1, 2025).

First, Defendants argue Dr. Reading's opinion is not related to Plaintiff's claims and should be excluded as irrelevant and prejudicial. (Doc. 101 at 3.) Defendants assert that Plaintiff's claims "are for the purported exacerbation of his PTSD resulting from [Mr. Bressor] filing the Defamation Lawsuit," (*id.*), whereas Dr. Reading stated the reason for his consultation was "to evaluate the psychological effects of [Plaintiff's] work experience at the Phoenix VA," (Doc. 101-1 at 2.) At a high level of generality, this description might suggest Dr. Reading's opinion encompasses other circumstances from Plaintiff's years working at the Phoenix VA that exacerbated his PTSD. However, the Discussion and Conclusion section of Dr. Reading's report shows his opinion focuses particularly on how Mr. Bressor's initiation of the underlying lawsuit against Plaintiff exacerbated his PTSD:

> Following the lawsuit and other actions, Mr. Sherrill reported the onset of fear and symptoms of anxiety arising from uncertainty as to what further actions his supervisor would take against him. . . .

---

[4] Contrary to the title of this Motion in Limine, Defendants argue exclusively to exclude—not simply limit—Dr. Reading's testimony.

> . . .
>
> To the extent [Plaintiff's] report is reliable, to a reasonable degree of psychiatric probability, as a result of the work issues, in terms of the actions of his prior chief filing a lawsuit against him, he has developed psychiatric symptoms fulfilling criteria for a reactivation of his prior trauma disorder, in the form of [PTSD], along with a Major Depressive Disorder . . . .

(Doc. 101-1 at 18.) Thus, Dr. Reading's opinion is relevant to Plaintiff's claims for Wrongful Institution of Civil Proceedings and Abuse of Process.

Next, Defendants argue Dr. Reading's opinion is not based on sufficient facts or data as required by Rule 702(b). (Doc. 101 at 4.) Defendants cite to *Gout v. 24HR Homecare LLC*, No. CV-21-00852-PHX-DLR, 2023 WL 6127669 (D. Ariz. Sept. 19, 2023), for the rule that a sufficient factual basis for "a claimed exacerbation of PTSD . . . should include: (1) a reliable pre-incident baseline, (2) the incident itself, and (3) a reasonably complete post-incident record to evaluate symptom course, intervening events, and alternative causes." (Doc. 101 at 4.) Although Defendants characterize *Gout* as a similar case "addressing causation testimony involving neurological injury," *Gout* is inapposite. *Gout* addressed a claim involving a decedent who allegedly "struck her head and suffered a subdural hematoma, eventually leading to her death." 2023 WL 6127669, at *1. Thus, *Gout* says nothing about what constitutes a sufficient factual basis for a non-physical, psychological injury like exacerbation of PTSD.

Moreover, the district court in *Gout* rejected the very arguments that Defendants make here: "Defendants fault Dr. Wallis for not reviewing specific medical records from before Gout's July 28, 2019, fall and for not performing an examination or autopsy of the body. These arguments go to the weight, not admissibility, of Dr. Wallis' opinion." *Id.* at *2 (citation omitted). Similarly, the court in *Gout* noted that "running a differential diagnosis [to rule out alternative causes] might improve reliability, [but] the failure to do so does not render the opinion categorically reliable." *Id.*; *accord Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 790 (D. Ariz. 2017) ("A physician's failure to rule out the entire possible universe of sources of an individual's malady goes to the weight the jury gives the testimony, and not to the admissibility of the expert's opinion.").

Lastly, Defendants argue Dr. Reading's methodology is unreliable because Dr. Reading "relies heavily on a single psychological test administered in the context of litigation," the MMPI-3 Personality Assessment Inventory, which "relies on a respondent's candor." (Doc. 101 at 5–6.) Again, these arguments go toward the weight of the testimony. Defendants may cross-examine Dr. Reading on these points, but they do not show Dr. Reading's testimony is inadmissible.

As such, the Court will grant the unopposed Motion to File Defendants' Motion in Limine to Exclude (or Limit) Plaintiff's Expert Under Seal (Doc. 100), direct the Clerk of Court to file Defendants' Fifth Motion in Limine lodged at Doc. 101, and deny Defendants' Fifth Motion in Limine. The Court finds Dr. Reading is qualified, as he represents that he is a forensic psychologist with extensive experience in trauma-related evaluations; his methodology is widely accepted in his field, and it appears to have been reliably applied to the facts of this case. Defendants' concerns regarding relevant issues such as post-2018 records and alleged alternative stressors go to the weight, not admissibility, of the opinions. However, whether Dr. Reading is permitted to rely on the newly disclosed documents is dependent on the Court's previous rulings on these documents.

## II.    JURY INSTRUCTIONS

The objection to Instruction 2.14 Expert Opinion Testimony (Doc. 122 at 28) has been resolved by the Court's rulings on motions in limine.

In response to the objection to Instruction 2.13 Use of Requests for Admission (Doc. 122 at 27), the Court approves of modifying the instruction to include the following statement: "A denial provided in response to a Request for Admission is not a fact having been proven."

Regarding Instruction 3.5 Return of Verdict (Doc. 122 at 40), the Court does not find this instruction to be necessary and will explain the verdict form to the jury as appropriate.

Regarding Instruction 5.2 Measures of Types of Damages (Doc. 122 at 43), this is duplicative of Plaintiff's Jury Instruction No. 6 – Damages (Compensatory), which appears

to better track the requirements of this case and clearly delineates this inquiry from the one for punitive damages.

Regarding 5.4 Damages Arising in the Future—Discount to Present Cash Value (Doc. 122 at 47), Plaintiff responds to Defendants' objection by proposing all of the language be stricken except for the first sentence: "Non-economic damages such as pain and suffering are not reduced to present cash value." Based on this response, the Court does not find the instruction is necessary or helpful to give as the jury will not be considering present cash value.

Instruction 5.5 Punitive Damages (Doc. 122 at 48) will not be given, as Plaintiff joins Defendants' Jury Instruction No. 5 on Punitive Damages.

In response to Defendants' objections, Plaintiff also withdraws Plaintiff's Jury Instructions Nos. 2, 5, 7, and 8. Plaintiff's Jury Instruction No. 9 will not be given as the Court granted Defendants' request to exclude evidence of the administrative complaints and Mr. Bressor's removal from federal service, but if Plaintiff's proffer specific admissible evidence as discussed above, this would appear to be an appropriate limiting instruction to give.

**A. Plaintiff's Instruction No. 4 – Favorable Termination**

Defendants object to Plaintiff's Jury Instruction No. 4, Favorable Termination, arguing that it omits necessary language from *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986), specifying that "[a] voluntary procedural or technical dismissal is not a favorable termination of the case." (Doc. 122 at 56.) Plaintiff agrees that Defendants' proposed addition derives from *Frey* but "omits its controlling principle: that the inquiry is one of substance, not form, and that a voluntary dismissal that may plausibly be construed as a confession of meritlessness is a favorable termination." (*Id.*) As such, Plaintiff proposes that the Favorable Termination instruction be given as follows:

> An action terminates in a plaintiff's favor when it ends in a manner that reflects on the merits of the action and indicates the plaintiff's innocence of, or non-liability for, the underlying claim. A voluntary dismissal by the party who initiated the action may constitute a favorable termination if the dismissal reflects on the merits of the case and indicates a lack of merit in the claim.

> In determining whether a voluntary dismissal constitutes a favorable termination, you must look not at the form of the dismissal, but at whether the proceedings terminated favorably in substance. A voluntary dismissal that may plausibly be construed as a confession that the case was without merit constitutes a favorable termination. A voluntary dismissal based solely on a procedural or technical ground unrelated to the merits does not, by itself, constitutes [sic] a favorable termination.

(*Id.* at 56–57.)

Plaintiff's proposed changes accurately summarize the favorable termination inquiry, but the Court will propose a condensed version. Notably, Defendants misquote *Frey*, adding the word "voluntary" to a portion of the opinion discussing *involuntary* dismissals (i.e., court-ordered dismissals) for procedural or technical reasons, such as those pursuant to a statute of limitations, which do not reflect on the merits of the action and indicate the defendant's nonliability. *See Frey*, 722 P.2d at 278. But *Frey* went on to discuss how voluntary dismissals present unique issues often requiring the factfinder "to determine what actually occurred" and whether the voluntary dismissal "was, in effect, a confession that the case was without merit." *Id.* at 279. Here, assuming Mr. Bressor's stated reason for dismissing the defamation case (to pursue administrative remedies) is a "procedural" or "technical" reason that does not reflect on the merits of the case, there are still factual determinations for the jury regarding whether this was the true and exclusive reason for his voluntary dismissal. Additionally, having to instruct on what constitutes "procedural" or "technical" grounds for dismissal would likely confuse the jury, so the Court believes an instruction distinguishing between grounds that do and do not reflect on the merits of the case is sufficient.

**B. Defendants' Jury Instruction No. 1 – Advice of Counsel**

Plaintiff objects to Defendants' Jury Instruction No. 1, Probable Cause for Prosecution (Advice of Counsel), arguing, *inter alia*, that it "assumes, rather than submits to the jury, the contested factual questions [regarding] whether an attorney–client relationship existed between [Mr. Bressor] and Mr. Larson." (Doc. 122 at 66.) In response, Defendants did not directly address this portion of Plaintiff's objection. (*See id.* at 67.)

Certainly, in most cases concerning wrongful institution of civil proceedings where an advice-of-counsel defense is raised, the defendant relies on the advice of their own attorney. Thus, attorney–client privilege is often at issue in these cases, as invoking the privilege to shield documents relevant to the advice-of-counsel defense constitutes a waiver of the defense. *E.g.*, *Malena Produce, Inc. v. Canelos*, No. 2 CA-CV 2025-0238, 2026 WL 194548, at *6 n.5 (Ariz. Ct. App. Jan. 26, 2026). But under Arizona law, an attorney–client relationship is not an express requirement to raise an advice-of-counsel defense. For example, a litigant bringing a civil action may rely on the advice of the attorney who prosecuted the criminal case concerning the same misconduct. *See Tate v. Connel*, 416 P.2d 213, 217 (Ariz. Ct. App. 1966). Thus, Plaintiff is incorrect to argue, based on the facts available, that the jury must be tasked with determining whether an attorney–client relationship existed. However, Defendants must still establish that the attorney whose advice was sought was duly licensed to practice law in Arizona at the relevant time. *See Joseph v. Markovitz*, 551 P.2d 571, 574 (Ariz. Ct. App. 1976). The Court will propose a necessary modification to the proposed instruction to reflect this requirement.

Plaintiff's other proposed additions to Defendants' Jury Instruction No. 1 are duplicative or otherwise improper. The proposed RAJI instruction notes this defense requires a "full, fair and complete disclosure to such attorney of all pertinent and material facts," so it is not necessary to reiterate that the defense fails if Mr. Bressor failed to make such a disclosure. Additionally, adding requirements that Mr. Bressor commenced the underlying lawsuit "in good-faith reliance" on the advice and "not for an improper purpose" conflate the lack of probable cause element with the malice element. A party is not liable for malicious prosecution simply because the party filed a lawsuit with malice— indeed, ill feelings are often the impetus for many meritorious lawsuits, particularly those for defamation.

Lastly, it is not improper to instruct the jury it "must find" probable cause if they find Defendants have established the advice-of-counsel defense applies, as proving the defense means the "existence of probable cause has been established as a matter of law."

*Tate v. Connel*, 416 P.2d 213, 217 (Ariz. Ct. App. 1966). However, the "must find" language is superfluous, and the jury can simply be instructed that if Defendants prove the elements of the defense, "then there was probable cause in commencing or maintaining the defamation lawsuit against Patrick Sherrill."

As such, with the modifications noted above, the Court will give Defendants' Jury Instruction No. 1 as proposed, following RAJI (Civil) 8th Intentional Torts 22.

### C. Defendants' Jury Instruction No. 2 – Abuse of Process

Plaintiff joins Defendants' Jury Instruction No. 2, Abuse of Process, and proposes the following language to replace the bracketed placeholder regarding "an appropriate description of the specific judicially sanctioned processes which plaintiff claims defendant abused":

> (a) the filing of the September 28, 2022 defamation complaint in Maricopa County Superior Court; (b) the filing of the April 21, 2023 amended defamation complaint, including the alteration of alleged dates that would otherwise fall outside the statute of limitations; (c) the May 5, 2023 written settlement demand requiring a written acknowledgment from Plaintiff; and/or (d) the continuation of the defamation proceedings after Defendant knew or should have known that the statements alleged in the complaint had not been made.

(Doc. 122 at 68.) The Court agrees that Plaintiff must propose a replacement for the placeholder text, but Plaintiff's proposals do not track the allegations in his Complaint. Plaintiff originally pled Mr. Bressor "wrongfully used the **judicial process** . . . by, among other things, the following:"

> a. Naming the wrong party in his defamation action;
> b. Continuing to pursue the action despite failing to abide by the Court's order to provide a specific defamatory statement and date of publication;
> c. Being motivated not by financial gain, but to accomplish an improper purpose of intimidating and frightening Sherrill; and
> d. Dismissing the Underlying Lawsuit when Sherrill was no longer a defendant.

(Doc. 1 at 10) (emphasis added). Obviously, the instruction for abuse of process must reflect the allegations as originally pled. However, the Court has concerns regarding whether each of those mentioned constitutes "a willful act in the use of judicial process," *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. 2004) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982)), sufficient to support an abuse of process claim.

Additionally, the Court notes the parties have not proposed an instruction defining what constitutes an improper purpose or ulterior motive for abuse of process. The Court proposes giving the RAJI (Civil) 7th Intentional Torts 18.2, Abuse of Process – Reasonably Justifiable Conduct, and 18.3, Abuse of Process – Primary Motivation.

**D.  Defendants' Jury Instruction No. 3 – Existence of Probable Cause**

Plaintiff joins Defendants' Jury Instruction No. 3, Existence of Probable Cause, subject to the following proposed addition: "Probable cause is evaluated as of the time the proceeding was initiated and at each point the proceeding was continued." (Doc. 122 at 69.) This language is not derived, verbatim or in substance, from either of the sources cited by Plaintiff. *See* Restatement (Second) of Torts § 662 cmt. c (A.L.I. 1965); *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313 (Ariz. 1988). Moreover, the current instruction addresses this point, as it requires the person "who initiates *or continues* proceedings" to be "sufficiently informed as to the law and the facts to justify him in initiating *or continuing* the proceedings." (Doc. 122 at 69) (emphasis added). Plaintiff's proposed addition is unnecessary and risks confusing the jury, so the Court will give Defendants' Jury Instruction No. 3 as proposed, following RAJI (Civil) 8th Intentional Torts 21. Plaintiff could emphasize this point to the jury if there is evidence that Mr. Bressor lacked probable cause at any point after initiating the proceedings.

Additionally, the Court proposes replacing "civil wrong" with "defamation" or "defamation of character," which was the specific civil wrong pled in the underlying action. However, the jury must also be instructed as to the elements of a defamation claim in order to determine whether Mr. Bressor reasonably believed the "acts or omissions constitute defamation" by Mr. Sherrill.  The Court suggests the jury be given the RAJI (Civil) 7th Defamation 1–6, with the parties to determine whether the underlying defamation claim required actual malice (and thus give Defamation 1A and 4A) or simple negligence (and thus give Defamation 1B and 4B), and whether giving Defamation 4C (Fact Versus Opinion) is appropriate.

**E.  Defendants' Jury Instruction No. 4 – Pre-Existing Condition (Eggshell)**

Plaintiff joins Defendants' Jury Instruction No. 4, Pre-Existing Condition, Unusually Susceptible Plaintiff, "subject to one terminology modification: in both paragraphs, replace "fault of Martin Bressor" and "Martin Bressor's Fault" with "wrongful conduct of Martin Bressor" and "Martin Bressor's wrongful conduct." (Doc. 122 at 70.) Plaintiff believes this change is necessary because "the term 'fault' in RAJI's standard form is keyed to negligence cases." (*Id.*) Finding no risk of prejudice or confusion, the Court approves of modifying Defendants' Jury Instruction No. 4, which follows RAJI (Civil) 8th Personal Injury Damages 2, to replace the word "fault" with "wrongful conduct."

### F. Defendant's Jury Instruction No. 5 – Punitive Damages

Plaintiff joins Defendants' Jury Instruction No. 5, Punitive Damages, "subject to one necessary addition to comply with federal constitutional limits on punitive damages." (Doc. 122 at 71.) Plaintiff proposes adding the following language:

> In considering the degree of reprehensibility of Defendant's conduct, you may consider whether that conduct also caused harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages to punish Defendant for harm to anyone other than Plaintiff.

(*Id.* at 71–72.) The instruction as proposed addresses this issue as one of the alternatives by which Plaintiff may recover punitive damages—by showing (a) Mr. Bressor's conduct was outrageous, oppressive, or intolerable, and (b) Mr. Bressor knew or intentionally disregarded that his conduct created a substantial risk of significant harm to others. However, the Court approves of a minor modification to the end of the instruction noting: "You may not, however, set the amount of punitive damages to puinish Defendants for harming anyone other than the Plaintiff, and will otherwise give Defendants' Jury Instruction No. 5 as proposed, following RAJI (Civil) 8th Personal Injury Damages 4 and RAJI (Civil) 8th Standard 3.

### G. Defendants' Jury Instruction No. 6 – Community Liability for Intentional Tort

Plaintiff objects to Defendants' proposed Jury Instruction No. 6, Community Liability for Intentional tort of Spouse, because "Defendants forfeited the community non-

liability defense by failing to plead it as an affirmative defense in their Answer." (Doc. 122 at 73.) But it is Plaintiff's burden to establish community liability, rather than an affirmative defense to be pled and proven by Defendants. *See Selby v. Savard*, 655 P.2d 342, 349 (Ariz. 1982) ("In the area of intentional torts, the community is not liable for one spouse's malicious acts unless it is specifically shown that the other spouse consented to the act or that the community benefited from it. The reasoning is that because a malicious tort does not ordinarily benefit the community, the community is not liable without proof of the non-tortfeasor spouse's knowledge of, consent to, or ratification of the other spouse's wrong." (citation omitted)). As such, the Court will give Defendants' Jury Instruction No. 6 as proposed, following RAJI (Civil) 7th Intentional Torts 24. However, the Court may need to address whether, because of the nature of the claims, Plaintiff must prove Mr. Bressor's wife approved of his conduct.

## III. VERDICT FORM

The parties have filed competing Proposed Verdict Forms. Plaintiff's form is a simple general verdict form asking whether Plaintiff proved "by a preponderance of the evidence each of the elements" of Counts One and Two. Defendants' form instead asks the jury for their specific findings as to each element of Counts One and Two. The Court will approve of a general form of verdict, with a proposed version to be provided to counsel.

## IV. CONCLUSION

Based on the foregoing, the Court enters the following orders.

**IT IS ORDERED** the Motion to File Exhibit 2 Under Seal (Doc. 90) is **GRANTED**. The Clerk of Court is directed to file under seal the exhibit lodged at Doc. 91.

**IT IS FURTHER ORDERED** the unopposed Motion to File Defendants' Motion in Limine to Exclude (or Limit) Plaintiff's Expert Under Seal (Doc. 100) is **GRANTED**. The Clerk of Court is directed to file Defendants' Fifth Motion in Limine lodged at Doc. 101.

**IT IS FURTHER ORDERED** Plaintiff's Motion in Limine to Exclude Evidence

Mischaracterizing Plaintiff's Protected Complaints (Doc. 93) is **GRANTED**; Plaintiff's Motion in Limine to Exclude Evidence Mischaracterizing Plaintiff's Protected Complaints (Doc. 93) is **GRANTED IN PART** as described herein; and Plaintiff's Motion in Limine to Preclude Any Defense Expert Witness Testimony (Doc. 95) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** Defendants' First Motion in Limine to Exclude EEO/EEOC/Veterans Administration Claims (Doc. 96) is **GRANTED WITHOUT PREJUDICE**; Defendants' Second Motion in Limine to Exclude Undisclosed Medical Records (Doc. 97) is **DENIED WITHOUT PREJUDICE**; Defendants' Third Motion in Limine to Exclude Evidence of Undisclosed Damages (Doc. 98) is **GRANTED**; Defendants' Fourth Motion in Limine to Exclude Email (Doc. 99) is **DENIED**; and Defendants' Fifth Motion in Limine: To Exclude (or Limit) Plaintiff's Expert Under Rule 702 and Daubert (lodged at Doc. 101) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Exclude Late-Disclosed Medical Records, Preclude PTSD Exacerbation Damages, and for Related Rule 37 Relief (Doc. 117) is **DENIED**.

Dated this 16th day of June, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge